F.#2010R02495

**14 MISC 51**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
IN THE MATTER OF AN APPLICATION :
OF THE UNITED STATES OF AMERICA :      SEALED APPLICATION
FOR AN ORDER AUTHORIZING THE       :
USE OF A PEN REGISTER AND A        :
TRAP AND TRACE DEVICE              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

        Amanda Hector, an Assistant United States Attorney for the Eastern District of

New York, hereby applies to the Court for an Order pursuant to 18 U.S.C. §§ 3122 and 3123,

authorizing for a period of 60 days the installation and use of a pen register and a trap and trace

device on (305) 775-4402, a telephone issued by AT&T Wireless (the "SUBJECT

TELEPHONE"). AT&T Wireless is referenced herein as the "service provider."

        In support of this application I state the following:

        1.    I am an Assistant United States Attorney in the Office of Loretta E. Lynch,

United States Attorney for the Eastern District of New York. As such, I am an "attorney for the

Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure, and therefore,

pursuant to 18 U.S.C. § 3122, may apply for an Order authorizing the installation and use of pen

registers and trap and trace devices.

        2.    The Court has authority to order the installation and use of a pen register or

a trap and trace device anywhere in the United States if the Court finds that the attorney for the

government has certified to the Court that the information likely to be obtained is relevant to an

ongoing criminal investigation. 18 U.S.C. §§ 3122 and 3123. As the United States Court of

Appeals for the Second Circuit has explained, an application for a pen register or trap and trace

device

> need only identify the applicant and the investigating law
> enforcement agency and certify that "the information likely to be
> obtained is relevant to an ongoing criminal investigation being
> conducted by that agency." 18 U.S.C. § 3122(b)(2). The
> provision was not intended to require independent judicial review of
> relevance; rather, the reviewing court need only verify the
> completeness of the certification.

In re United States, 10 F.3d 931, 935 (2d Cir. 1993) (emphasis added); accord In re Applications,

515 F. Supp. 2d 325, 329 (E.D.N.Y. 2007) (explaining "minimal requirement" of Section

3122(b)).

    3.    Based on information provided to me by special agents of the Federal

Bureau of Investigation (the "investigative agency"), I hereby certify that the investigative agency

is conducting an ongoing criminal investigation into possible violations of federal criminal laws,

including conspiracy to commit racketeering, money laundering and wire fraud, in violation of 18

U.S.C. §§ 1343, 1346, 1349, 1956, 1957 and 1962, by ENRIQUE SANZ and others known and

unknown, occurring in the Eastern District of New York and elsewhere, and that the information

likely to be obtained from a pen register and trap and trace device on the SUBJECT TELEPHONE

is relevant to that investigation.

    4.    Based upon the above certification, the government requests that the Court

issue an Order that provides:

    a.    Pursuant to 18 U.S.C. §§ 3122 and 3123, authorization for the

installation and use of a pen register to record or decode dialing, routing, addressing, or signaling

2

information — excluding the decoding of post-cut-through dialed digits ("PCTDD")[1] —

transmitted from the SUBJECT TELEPHONE, to record the date and time of such dialings or

transmissions, and to record the length of time the telephone receiver in question is "off the hook"

for incoming or outgoing calls for a period of 60 days.

---

[1]     PCTDD "are digits that are dialed from a telephone after a call is connected or
'cut-through.'"   In re Application, 632 F. Supp. 2d 202, 203 n.1 (E.D.N.Y. 2008).   Pursuant to
the proposed Order to the Service Provider, if possible, the providers will forward only
pre-cut-through-dialed digits to the investigative agency.   If the providers' technical capabilities
require them to forward all dialed digits including PCTDD, however, the investigative agency will
only decode and forward to the assigned special agents the numbers that are dialed before the call
is cut through.   Thus no PCTDD will be decoded or accessed by anyone.   See id. at 204 n.3 ("It is
irrelevant that the provider will forward PCTDD to the Government and that the Government will
therefore be able, if it violates the court order, to record and decode it.").

b.  Pursuant to 18 U.S.C. §§ 3122 and 3123, authorization for installation and use of a trap and trace device on the SUBJECT TELEPHONE to capture and record the incoming electronic or other impulses which identify the originating numbers or other dialing, routing, addressing, or signaling information reasonably likely to identify the sources of wire or electronic communications and to record the date, time and duration of calls created by such incoming impulses, for a period of 60 days, and that the tracing operations be without geographical limits.

c.  Pursuant to 18 U.S.C. § 3123(b)(1)(C), authorization for the requested installation and use of a pen register and a trap and trace device to include the use of such a pen register and a trap and trace device on any changed telephone numbers assigned to an instrument bearing the same ESN/IMSI/IMEI as the SUBJECT TELEPHONE, or any changed ESN/IMSI/IMEI subsequently assigned to the same telephone number as the SUBJECT TELEPHONE, or any additional changed telephone number and/or ESN/IMSI/IMEI, whether the changes occur consecutively or simultaneously, listed to the same subscriber and account number as the SUBJECT TELEPHONE within the 60-day period authorized by this Order.

d.  Pursuant to 18 U.S.C. § 3123(b)(1)(C), authorization for the requested installation and use of a pen register and a trap and trace device to include any changed telephone numbers for the SUBJECT TELEPHONE subsequently listed to the same subscriber and assigned to the same cable, pair and binding post utilized by the SUBJECT TELEPHONE within the 60-day period authorized by this Order.

5.  The government further requests that the Court direct the service provider, and any other person or entity providing wire or electronic communication service in the United

4

States whose assistance is used to facilitate execution of the Order, to notify special agents of the investigative agency, upon oral or written request, of any and all changes (including additions, deletions, and transfers) in service regarding the SUBJECT TELEPHONE, including telephone numbers and subscriber information (published and non-published, and excepting call detail records as described in 18 U.S.C. § 2703(c)(2)(C)) associated with these service changes.

      6.     The government further requests that, pursuant to 18 U.S.C. § 3123(a)(1) and (b)(2), the Court direct that, upon service of the Order upon them, the service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of the Order furnish the information, facilities, and technical assistance necessary to accomplish unobtrusively the installation and use of the pen register and trap and trace device with compensation to be paid by the investigative agency for reasonable expenses directly incurred in providing such facilities and assistance.

      7.     The government further requests that the Order direct the service provider, and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order, to furnish the results of the pen register and trap and trace device installations to special agents of the investigative agency as soon as practicable, and on a continuing basis, 24 hours a day for the duration of the Order.

8.    Finally, pursuant to 18 U.S.C. §§ 3123(d) and 2705(b), the government also requests that the service provider, and any other person or entity whose assistance is used to facilitate execution of the Order be ordered not to disclose to the listed subscriber of the telephone, or to any other person (a) the existence of the Order of Authorization; (b) the existence of the Orders to the Service Provider; and (c) the existence of the pen register and trap and trace device to the listed subscriber for the SUBJECT TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person, unless and until otherwise ordered by the Court.    Because the targets, including SANZ, are unaware of the full scope and focus of the investigation, any disclosure of the instant application and Order would alert them to the existence of the investigation, which likely would cause them to flee or engage in the destruction of evidence.

9.    No prior request for the relief set forth herein has been made except to the extent set forth above.    The foregoing is affirmed under the penalties of perjury.    See 28 U.S.C. § 1746.

Dated:    Brooklyn, New York
         January 15, 2014


                                        Amanda Hector
                                        Assistant United States Attorney
                                        (718) 254-6212

6

F.#2010R02495

14 MISC          51

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
IN THE MATTER OF AN APPLICATION    :
OF THE UNITED STATES OF AMERICA    :       SEALED ORDER
FOR AN ORDER AUTHORIZING THE       :       TO AT&T WIRELESS
USE OF A PEN REGISTER AND          :
A TRAP AND TRACE DEVICE            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

        WHEREAS this Court has, upon the application of the United States of America,

entered an Order pursuant to 18 U.S.C. §§ 3121 et seq., authorizing the use of a pen register and a

trap and trace device for a period of 60 days on (305) 775-4402 (the "SUBJECT TELEPHONE"),

a telephone issued by AT&T Wireless (the "service provider") in connection with an ongoing

criminal investigation;

        Now therefore, it is hereby:

        1.      ORDERED, pursuant to 18 U.S.C. § 3123, that special agents of the Federal

Bureau of Investigation (the "investigative agency") may install, or cause to be installed, and use a

pen register to record or decode dialing, routing, addressing, or signaling information transmitted

from the SUBJECT TELEPHONE to record the date and time of such dialings or transmissions,

and to record the length of time the telephone receiver in question is "off the hook" for incoming or

outgoing calls for a period of 60 days, beginning at any time within 14 days from the date of this

Order.

        2.      IT IS FURTHER ORDERED that, to the extent possible in light of the

service provider's technical capabilities, the service provider shall forward to the investigative

agency only those digits dialed before a call is cut-through.   However, to the extent that the

*IF*

← EXCLUDING TOWER/SECTOR INFORMATION AND ALSO EXCLUDING THE RECORDING
AND/OR DECODING OF POST-CUT-THROUGH DIALED DIGITS (DEFINED AS DIGITS DIALED
FROM A TELEPHONE AFTER A CALL IS CONNECTED, OR "CUT THROUGH") →

J. O.
1/15/14

service provider is unable to exclude post-cut-through dialed digits, the service provider shall

forward ~~all dialed digits~~ *[NOTHING]* to the investigative agency. *SEE APPENDUM.*          *J.O. 1/15/14*

3.    IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123, that special

agents of the investigative agency may install, or cause to be installed, and use a trap and trace

device on the SUBJECT TELEPHONE to capture and record the incoming electronic or other

impulses which identify the originating number, or other dialing, routing, addressing, and

signaling information reasonably likely to identify the source of a wire or electronic

communication, and to record the date, time, and duration of calls created by such incoming

impulses, for a period of 60 days, beginning at any time within 14 days from the date of this Order,

and that the tracing operations be without geographical limits.

4.    IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(b)(1)(C), that

this authorization for the installation and use of a pen register and a trap and trace device applies

not only to the telephone number listed above for the SUBJECT TELEPHONE, but also to any

changed telephone number assigned to an instrument bearing the same ESN/IMSI/IMEI as the

SUBJECT TELEPHONE, or any changed ESN/IMSI/IMEI subsequently assigned to the same

telephone number as the SUBJECT TELEPHONE, or any additional changed telephone number

and/or ESN/IMSI/IMEI, whether the changes occur consecutively or simultaneously, listed to the

same subscriber and wireless telephone account number as the SUBJECT TELEPHONE within

the 60-day period authorized by this Order.

5.    IT IS FURTHER ORDERED that the service provider and any other person

or entity providing wire or electronic communication service in the United States whose assistance

is used to facilitate execution of the Order notify special agents of the investigative agency, upon

oral or written request, of any and all changes (including additions, deletions, and transfers) in

3

service regarding the SUBJECT TELEPHONE to include telephone numbers and subscriber information (published and non-published, and excepting call detail records, as described in 18 U.S.C. § 2703(c)(2)(C)) associated with these service changes.

6. IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(a)(1) and (b)(2), and 18 U.S.C. § 2703(c) and (d), that upon service of this Order upon it, the service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order shall furnish special agents of the investigative agency forthwith all information, including but not limited to telephone subscriber information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace device unobtrusively and with minimum interference.

7. IT IS FURTHER ORDERED that the service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order furnish the results of the pen register and trap and trace device installations to special agents of the investigative agency as soon as practicable, and on a continuing basis, 24 hours a day for the duration of the Order.

8. IT IS FURTHER ORDERED that the service provider and any other person or entity that provides technical assistance in executing this Order be compensated by the investigative agency for reasonable expenses directly incurred in providing such assistance.

9. IT IS FURTHER ORDERED that this Order shall be sealed until otherwise ordered by the Court, except that copies may be retained by the United States Attorney's Office, the investigative agency, the service provider and any other person or entity whose assistance is used to execute this Order.

4

10.    IT IS FURTHER ORDERED, finally, that unless and until otherwise ordered by the Court, the service provider and its representatives, agents and employees, and any other person or entity providing technical assistance in executing this Order shall not disclose until further notice in any manner, directly or indirectly, by any action or inaction: (a) the existence of the Order of Authorization; (b) the existence of the Order to the Service Provider; and (c) the existence of the pen register and trap and trace device to the listed subscriber for the SUBJECT TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person.  *See Addendum for further directives.* JO 1/15/14

Dated:      Brooklyn, New York
            January 15, 2014


                              s/James Orenstein
                              _____
                              HONORABLE JAMES ORENSTEIN
                              UNITED STATES MAGISTRATE JUDGE
                              EASTERN DISTRICT OF NEW YORK

5

## ADDENDUM TO SEALED ORDER TO AT&T WIRELESS

The attached order authorizes the use of a pen register and directs the relevant provider of telecommunications service (the "Provider") to furnish such assistance to the government in accomplishing the installation and use of that pen register.   The order uses the term "pen register" as defined in 18 U.S.C. § 3127(c), which provides, in part, that the information to be recorded or decoded "shall not include the contents of any communication[.]"   Post-cut-through dialed digits ("PCTDD") contain such "contents," as defined in 18 U.S.C. § 2510(8), and that unless such contents are screened out, the post-cut-through dialed digits therefore may not be provided to the government pursuant to the attached order.   *See In the Matter of the Application of the United States of America for an Order: (1) Authorizing the Installation and Use of a Pen Register and Trap and Trace Device, and (2) Authorizing Release of Subscriber and Other Information*, 622 F. Supp. 2d 411 (S.D. Tex. 2007); *In the Matter of Applications of the United States of America for Orders (1) Authorizing the Use of Pen Registers and Trap and Trace Devices and (2) Authorizing Release of Subscriber Information*, 515 F. Supp. 2d 325 (E.D.N.Y. 2007); *In the Matter of the Application of the United States of America for an Order Authorizing (1) Installation and Use of a Pen Register and Trap and Trace Device or Process, (2) Access to Customer Records, and (3) Cell Phone Tracking*, 441 F. Supp. 2d 816 (S.D. Tex. 2006).

The government proposes to avoid the unlawful interception of the contents of electronic communications either by having the provider furnish only pre-cut-through dialed digits or, if that is not within the providers capability, to have government personnel at the relevant investigative agency decode and forward to the special agents involved in the investigation only such pre-cut-through digits.   The government thus proposes to obtain a pen register "excluding

the *decoding* of" PCTDD.   Sealed Application at 3 (emphasis added).   In making this proposal,

the government relies on *In the matter of an Application of the United States for an Order

Authorizing the Use of Two Pen Register and Trap and Trace Devices*, 632 F. Supp. 2d 202, 204

n.3 (E.D.N.Y. 2008).   Sealed Application at 3 n.1.   For reasons I have previously explained, I

respectfully disagree with the proposition that the government's proposal is consistent with the

law.   *See In re Application of the U.S. for an Order Authorizing the Use of a Pen Register and a

Trap and Trace Device on Wireless Telephone*, 2008 WL 5255815, *3 (E.D.N.Y. Dec. 16, 2008).

Accordingly, to the extent that the government seeks to have the Provider disclose all

dialed digits to some government entity, and then to have personnel at that entity transmit to

investigative agents only pre-cut-through dialed digits, I deny the government's request because

granting it would require the Provider to violate applicable law.   If the Provider is able to furnish

the government only with *either* pre-cut-through dialed digits *or* all dialed digits except for those

that constitute "contents" within the meaning of 18 U.S.C. § 2510(8), it must do so.   If the

Provider cannot furnish the government with either of those categories of information without

also providing post-cut-through dialed digits that contain the contents of any communication, the

government's application for a pen register is denied in its entirety.

**SO ORDERED.**

Dated: Brooklyn, New York
      January 15, 2014

                               /s/ James Orenstein
                               JAMES ORENSTEIN
                               U.S. Magistrate Judge

Addendum page  2

F.#2010R02495

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
IN THE MATTER OF AN APPLICATION       :
OF THE UNITED STATES OF AMERICA       :      SEALED ORDER
FOR AN ORDER AUTHORIZING THE          :      OF AUTHORIZATION
USE OF A PEN REGISTER AND A           :
TRAP AND TRACE DEVICE                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

1 4 MISC          5 1

       This matter comes before the Court pursuant to an application by Assistant United

States Attorney Amanda Hector, an attorney for the Government as defined by Rule 1(b)(1) of the

Federal Rules of Criminal Procedure and a duly-authorized representative of a "governmental

entity" under 18 U.S.C. § 2703(c) and (d) requesting an Order pursuant to 18 U.S.C. §§ 3122 and

3123, authorizing for a period of 60 days the installation and use of a pen register and a trap and

trace device on (305) 775-4402, a telephone issued by AT&T Wireless (the "SUBJECT

TELEPHONE"). AT&T Wireless is referenced herein as the "service provider."

       UPON REVIEW OF THE APPLICATION, THE COURT HEREBY FINDS

THAT, pursuant to 18 U.S.C. § 3123, Applicant has certified that the information likely to be

obtained by use of a pen register and a trap and trace device is relevant to an ongoing criminal

investigation being conducted by the Federal Bureau of Investigation (the "investigative agency")

into possible violations of federal criminal laws, including conspiracy to commit racketeering,

money laundering and wire fraud, in violation of 18 U.S.C. §§ 1343, 1346, 1349, 1956, 1957 and

1962, by ENRIQUE SANZ and others known and unknown, occurring in the Eastern District of

New York and elsewhere, and that the information likely to be obtained from a pen register and

trap and trace device on the SUBJECT TELEPHONE is relevant to that investigation.

IT IS HEREBY ORDERED, pursuant to 18 U.S.C. § 3123, that special agents of

the investigative agency may install, or cause to be installed, and use a pen register to record or

decode dialing, routing, addressing, or signaling information transmitted from the SUBJECT

TOWER/SECTOR INFORMATION AND ALSO EXCLUDING THE RECORDING OR

J.O.
1/15/14

TELEPHONE — excluding the decoding of post-cut-through dialed digits ("PCTDD")[1] — to

record the date and time of such dialings or transmissions, and to record the length of time the

telephone receiver in question is "off the hook" for incoming or outgoing calls for a period 60

days, beginning at any time within 14 days from the date of this Order, and that the tracing

operations be without geographical limits.

AT &T
WIRELESS

----

[1]     PCTDD are digits that are dialed from a telephone after a call is connected or
"cut-through." In re Application, 632 F. Supp. 2d 202, 203 n.1 (E.D.N.Y. 2008). Pursuant to
the Order to the Service Provider, if possible, the provider will forward only
pre-cut-through-dialed digits to the investigative agency.   If the provider's technical capabilities
require it to forward all dialed digits including PCTDD, however, the investigative agency will
only decode and forward to the assigned special agents the numbers that are dialed before the call
is cut through.   Thus no PCTDD will be decoded or accessed by anyone.   See id. at 204 n.3 ("It is
irrelevant that the provider will forward PCTDD to the Government and that the Government will
therefore be able, if it violates the court order, to record and decode it.")

J.O.
1/15/14

DO NOT PERMIT SUCH
SEGREGATION OF DATA;
THE PROVIDER WILL FORWARD
NOTHING. SEE ADDENDUM
FOR FURTHER INSTRUCTIONS.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123, that special agents of the investigative agency may install, or cause to be installed, and use a trap and trace device on the SUBJECT TELEPHONE to capture and record the incoming electronic or other impulses which identify the originating number, or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication, and to record the date, time, and duration of calls created by such incoming impulses, for a period of 60 days, beginning at any time within 14 days from the date of this Order, and that the tracing operations be without geographical limits.

IT IS FURTHER ORDERED that this authorization for the installation and use of a pen register and a trap and trace device applies not only to the telephone number listed above for the SUBJECT TELEPHONE, but also to any changed telephone number assigned to an instrument bearing the same ESN/IMSI/IMEI as the SUBJECT TELEPHONE, or any changed ESN/IMSI/IMEI subsequently assigned to the same telephone numbers as the SUBJECT TELEPHONE, or any additional changed telephone numbers and/or ESN/IMSI/IMEI, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the SUBJECT TELEPHONE within the 60-day period authorized by this Order.

IT IS FURTHER ORDERED that this authorization for the installation and use of a pen register and a trap and trace device applies not only to the telephone number listed above for the SUBJECT TELEPHONE, but also to any changed telephone number for the SUBJECT TELEPHONE subsequently listed to the same subscriber and assigned to the same

4

cable, pair and binding post utilized by the SUBJECT TELEPHONE within the 60-day period authorized by this Order.

       IT IS FURTHER ORDERED that the service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order notify special agents of the investigative agency, upon oral or written request, of any and all changes in service regarding the SUBJECT TELEPHONE to include telephone numbers and subscriber information (published and non-published and excepting call detail records as described in 18 U.S.C. § 2703(c)(2)(C)) associated with these service changes.

       IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(a)(1) and (b)(2), and 18 U.S.C. § 2703(c) and (d), that upon service of this Order upon it, the service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of the Order shall furnish special agents of the investigative agency forthwith all information, including but not limited to telephone subscriber information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace device unobtrusively and with minimum interference.

       IT IS FURTHER ORDERED that the service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order furnish the results of the pen register and trap and trace device installations to special agents of the investigative agency as soon as practicable, and on a continuing basis, 24 hours a day for the duration of the Order.

IT IS FURTHER ORDERED that the service provider and any other person or entity whose assistance is used to facilitate this Order be compensated by the investigative agency for reasonable expenses directly incurred in providing such assistance.

Good cause having been shown, IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(d) and 2705(b), that this Order and the application be sealed until otherwise ordered by the Court, and that the service provider, their representatives, agents and employees, and any other person or entity involved in facilitating this Order shall not disclose in any manner, directly or indirectly, by any action or inaction, (a) the existence of the Order of Authorization; (b) the existence of the Order to the Service Provider; and (c) the existence of the pen register and trap and trace device to the listed subscriber for the SUBJECT TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person.
                    SEE ADDENDUM FOR FURTHER DIRECTIVES.

Dated:          Brooklyn, New York
                January 15, 2014


                                        s/James Orenstein
                                _____
                                HONORABLE JAMES ORENSTEIN
                                UNITED STATES MAGISTRATE JUDGE
                                EASTERN DISTRICT OF NEW YORK

6

## ADDENDUM TO SEALED ORDER OF AUTHORIZATION

The attached order authorizes the use of a pen register and directs the relevant provider of telecommunications service (the "Provider") to furnish such assistance to the government in accomplishing the installation and use of that pen register. The order uses the term "pen register" as defined in 18 U.S.C. § 3127(c), which provides, in part, that the information to be recorded or decoded "shall not include the contents of any communication[.]" Post-cut-through dialed digits ("PCTDD") contain such "contents," as defined in 18 U.S.C. § 2510(8), and that unless such contents are screened out, the post-cut-through dialed digits therefore may not be provided to the government pursuant to the attached order. *See In the Matter of the Application of the United States of America for an Order: (1) Authorizing the Installation and Use of a Pen Register and Trap and Trace Device, and (2) Authorizing Release of Subscriber and Other Information*, 622 F. Supp. 2d 411 (S.D. Tex. 2007); *In the Matter of Applications of the United States of America for Orders (1) Authorizing the Use of Pen Registers and Trap and Trace Devices and (2) Authorizing Release of Subscriber Information*, 515 F. Supp. 2d 325 (E.D.N.Y. 2007); *In the Matter of the Application of the United States of America for an Order Authorizing (1) Installation and Use of a Pen Register and Trap and Trace Device or Process, (2) Access to Customer Records, and (3) Cell Phone Tracking*, 441 F. Supp. 2d 816 (S.D. Tex. 2006).

The government proposes to avoid the unlawful interception of the contents of electronic communications either by having the provider furnish only pre-cut-through dialed digits or, if that is not within the providers capability, to have government personnel at the relevant investigative agency decode and forward to the special agents involved in the investigation only such pre-cut-through digits. The government thus proposes to obtain a pen register "excluding the *decoding* of" PCTDD. Sealed Application at 3 (emphasis added). In making this proposal,

the government relies on *In the matter of an Application of the United States for an Order Authorizing the Use of Two Pen Register and Trap and Trace Devices*, 632 F. Supp. 2d 202, 204 n.3 (E.D.N.Y. 2008). Sealed Application at 3 n.1. For reasons I have previously explained, I respectfully disagree with the proposition that the government's proposal is consistent with the law. *See In re Application of the U.S. for an Order Authorizing the Use of a Pen Register and a Trap and Trace Device on Wireless Telephone*, 2008 WL 5255815, *3 (E.D.N.Y. Dec. 16, 2008).

Accordingly, to the extent that the government seeks to have the Provider disclose all dialed digits to some government entity, and then to have personnel at that entity transmit to investigative agents only pre-cut-through dialed digits, I deny the government's request because granting it would require the Provider to violate applicable law. If the Provider is able to furnish the government only with *either* pre-cut-through dialed digits *or* all dialed digits except for those that constitute "contents" within the meaning of 18 U.S.C. § 2510(8), it must do so. If the Provider cannot furnish the government with either of those categories of information without also providing post-cut-through dialed digits that contain the contents of any communication, the government's application for a pen register is denied in its entirety.

**SO ORDERED.**

Dated: Brooklyn, New York
January 15, 2014

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge

Addendum page 2